IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

REGINALD L. DUNAHUE
ADC #106911                                                                                      PLAINTIFF

V.                        CASE NO. 5:14-CV-331-JLH-BD

RAY HOBBS, et al.                                                                            DEFENDANTS

## RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge J. Leon Holmes.  You may file written objections to this Recommendation.  If you file objections, they must be specific and must include the factual or legal basis for your objection.  Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record.  By not objecting, you may also waive any right to appeal questions of fact.

**II.    Background:**

Plaintiff Reginald Dunahue, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit *pro se* under 42 U.S.C. § 1983.  His complaint included a number of unrelated claims that spanned over two years.  (Docket entries #1, #8, #10) Mr. Dunahue was given several opportunities to amend his complaint and was instructed to narrow his lawsuit to one constitutional claim.  (#5, #9)  Mr. Dunahue did not comply

with the Court's instructions but nonetheless was allowed to proceed on an excessive-force claim. (#11) In support of this claim, Mr. Dunahue alleges that the Defendants sprayed excessive amounts of chemical agents at various times from 2012-2014 for sadistic reasons. (#10)

Defendants Plummer and Watson have now filed a motion for summary judgment (#117), and Mr. Dunahue responded (#126).

### III. <u>Discussion:</u>

A. Standard for Granting Summary Judgment

Summary judgment means that the court rules in favor of a party without the need for a trial. A party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

Here, Defendants Watson and Plummer have moved for summary judgment, so they must come forward with evidence showing that there is no real dispute about any fact that is important enough to make a difference in how the case is decided. If they meet this burden, Mr. Dunahue must respond by producing evidence that contradicts the Defendants' evidence. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If he does not come forward with enough evidence to show that there is a real dispute, the Court must grant summary judgment in favor of Defendants, and there

will be no trial. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

    B.    Official Capacity Claims

Mr. Dunahue has sued the Defendants in both their individual and official capacities and seeks monetary relief. Claims for money damages from the Defendants in their official capacities, however, are barred by sovereign immunity. A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Accordingly, all official-capacity claims against the Defendants should be summarily dismissed.

    C.    Defendant Plummer

The facts underlying Mr. Dunahue's claim for excessive force are largely undisputed. On January 29, 2014, Officer Lundy called Defendant Plummer to Mr. Dunahue's cell and informed him that Mr. Dunahue should be placed on behavior control.[1] As is protocol for processing inmates into behavior control, Defendant Plummer ordered Mr. Dunahue to remove his clothes and turn over his personal property. Mr. Dunahue cursed Defendant Plummer and refused to comply. (#117-1, p. 9) For several minutes Defendant Plummer attempted to convince Mr. Dunahue to comply. (#117-1, p.

---

[1] According to Officer Lundy's report, Defendant Watson's affidavit, and Defendant Plummer's affidavit, Nurse Kelly and Officer Lundy entered Mr. Dunahue's cell when Mr. Dunahue grabbed the Lexan shield that Nurse Kelly was using and refused to let go. (#117-2; #117-3; #117-9) Officer Lundy attempted to retrieve the Lexan shield when he noticed that Mr. Dunahue had what appeared to be a container of feces. (#117-2) Officer Lundy called his supervisor, Defendant Plummer. (#117-2) Mr. Dunahue disputes that he took the shield from Nurse Kelly but agrees that Defendant Plummer was called to the area because the nurse said there was a problem. (#117-1)

15) Eventually, Mr. Dunahue removed his underwear but refused to give Defendant Plummer his personal property. Defendant Plummer then sprayed Mr. Dunahue in his genital and facial areas with chemical agents.[2] Mr. Dunahue retreated to the back of his cell while being sprayed and grabbed a spray bottle containing a mixture of his feces and urine and continued to spray it toward Defendant Plummer until Defendant Plummer stopped spraying Mr. Dunahue with the chemical agent. (#117-1, p. 18, 19, 23)

Defendant Plummer left the area, and another officer removed Mr. Dunahue from his cell. At that point, Mr. Dunahue was taken to shower. (#117-1, p. 25)

To prevail on an Eighth Amendment excessive force claim, a convicted prisoner must demonstrate that the defendant used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair,* 707 F.3d 984, 990 (8th Cir. 2013). Relevant factors include the need for force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The Eighth Circuit Court of Appeals has held that "a limited application of [chemical spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force." *Burns v. Eaton*, 752 F.3d 1136, 1139-

---

[2] ADC policy that allows officers to use non deadly force against inmates to maintain order, discipline, and compliance with orders. (#117, Ex. E) ADC policy also allows officers to use chemical agents when an inmate will not produce items or relocate. (#117, Ex. F)

40 (8th Cir. 2014) (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)).  The few cases where the Court has held that prison officials were not entitled to summary judgment on an inmate's excessive-force claim based on the use of chemical spray involved situations "where there was no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary 'super-soaker' quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force."  *Burns*, 752 F.3d at 140 (citing *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002); *Lawrence v. Bowersox*, 297 F.3d 727, 730, 732 (8th Cir. 2002)).

To determine whether qualified immunity applies, the Court must determine "whether the facts alleged or shown, construed in the light most favorable to [Mr. Dunahue], establish the violation of a constitutional or statutory right," and "whether that constitutional right was clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that [his or her] actions were unlawful."  *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014)(quoting *Krout v. Goemner*, 583 F.3d 557, 564 (8th Cir. 2009).  Importantly, those two issues may be addressed in any order.  *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2084 (2011).

Here, Defendant Plummer tried to convince Mr. Dunahue to comply with his orders.  By Mr. Dunahue's own admission, he argued with Defendant Plummer, cursed him, and refused to obey Defendant Plummer's direct order.

It is undisputed that Defendant Plummer was following ADC policy when he

sprayed Mr. Dunahue with the chemical agent after Mr. Dunahue refused the direct order to hand over his personal property.

Mr. Dunahue alleges that Defendant Plummer sprayed him for longer than he should have.  It is undisputed, however, that Mr. Dunahue started spraying Defendant Plummer with feces and urine and continued to do so until Defendant Plummer stopped spraying him.  Mr. Dunahue has offered no facts to indicate that Defendant Plummer used force maliciously and sadistically or that Defendant Plummer's use of chemical spray was unreasonable under the circumstances.  Based on these undisputed facts, the Court concludes that Defendant Plummer did not use excessive force against Mr. Dunahue.  Defendant Plummer is entitled to qualified immunity because there was no constitutional violation.

    D.    Defendant Watson

On March 3, 2016, Judge Holmes granted Mr. Dunahue's motion for relief and has allowed Mr. Dunahue to proceed on a claim that Defendant Watson was deliberately indifferent to his safety by failing to protect him from the excessive force.  (#130)

Mr. Dunahue alleges that on June 20, 2013, June 2, 2013, and on several other occasions, Defendant Watson did not allow him to leave his cell in isolation 4 before toxic chemicals were employed in the area and that Defendant Watson made no effort to protect him from the effects of the chemicals.  (#117, Ex. H)  According to Mr. Dunahue, the chemicals spread to his cell, which was adjacent to the cell where the chemicals were sprayed, and burned his eyes, nose, and skin and hindered his breathing.  (#117, Ex. H)

Defendants argue that Mr. Dunahue has failed to come forward with evidence that Defendant Watson had any knowledge about the alleged incidents or that Defendant Watson was deliberately indifferent to his health and safety. (#118) Mr. Dunahue responded that Defendant Watson knew that Defendant Plummer frequently used excessive amounts of chemical agents and failed to intervene. (#126)

To state a failure-to-protect claim, an inmate must allege that there was a substantial risk of serious harm and that the defendant knew of, but disregarded, that risk. *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011); *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007); *Lenz v. Wade*, 490 F.3d 991, 995-996 (8th Cir. 2007). To satisfy the objective prong of the test, an inmate must show that a prison official's failure to act resulted in the inmate's being "incarcerated under conditions posing a substantial risk of serious harm." *Young v. Selk*, 508 F.3d 868 (8th Cir. 2007). A prison official is deemed deliberately indifferent to a substantial risk of harm to an inmate if the official has "actual intent that the inmate be harmed, knowledge that harm will result, or reckless disregard of a known excessive risk to inmate health and safety." *Krein v. Norris*, 309 F.3d 487, 492 (8th Cir. 2002).

Even if Defendant Watson knew in advance that chemical agents would be used in isolation 4, Mr. Dunahue has failed to demonstrate that he was subject to a substantial risk of serious harm while in his isolation cell. The facts do not suggest that Defendant Watson had any reason to know that chemical agents being employed in isolation 4 in a nearby cell would harm Mr. Dunahue in his cell. In addition, there is no evidence that

Defendant Watson intended to harm Mr. Dunahue. As a matter of law, Defendant Watson did not fail to protect Mr. Dunahue.

Even if the Court found Defendant Watson failed to protect Mr. Dunahue, Defendant Watson is entitled to qualified immunity because there is no clearly established law that a supervisor should know that chemical agents employed in one cell could create an excessive risk to the health and safety of another inmate in an adjacent isolation cell. Accordingly, the claim against Defendant Watson should be dismissed.

### IV. Conclusion:

The Court recommends that Defendants' motion for summary judgment (#117) be GRANTED. Mr. Dunahue's claims against the Defendants should be DISMISSED, without prejudice. Mr. Dunahue's motion for a pretrial conference (#128) and motion to compel (#131) will be moot, if this recommendation is adopted.

Dated 7th day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE